LOTTINGER, Judge.
This is a workmen’s compensation suit wherein the plaintiff, James Ricks, Jr., seeks compensation benefits in the amount of $19.50 per week for 400 weeks for total permanent disability. The petition alleges that on or about September 19, 1952, while plaintiff was employed as a common laborer by T. W. Kleinpeter, his right leg was broken when a log was pushed against it. It is further set out that the broken leg was placed in a cast in Charity Hospital in N ew Orleans and that the cast remained on the leg for approximately six months; further, that for an additional period of three months, the plaintiff found it extremely painful and difficult to work. It is then set out that on or about August 6, 1953, while riding a horse, Ricks fell and “due to the fact that his right leg was not completely healed, the tibia was again broken in the identical spot of the original break and in addition, the fibula was broken just opposite the break in the tibia.” The further recitation is made that the second break was a direct result of the fact that the leg had been previously broken and had not completely healed. The Defendant, Maryland Casualty Company, is the workmen’s compensation insurer of T. W. Kleinpeter.
The defendant in its answer admitted the occurrence of the first accident on or about September 19, 1952, and alleged that compensation had been paid through June 4, 1953. The record shows that actually compensation was paid through May 28, 1953, as the plaintiff did not cash the check dated June 4, 1953, referred to in the defendant’s answer. ' The remaining allegations of the petition are denied.
The case was tried on the merits in the court below and is now before us on an appeal taken by the plaintiff from a judgment which dismissed his suit.
As shown by the pleadings, the occurrence of the first accident is not in dispute and the sole question presented in the case is whether the second accident and resulting fracture were caused by the first fracture. It appears that the plaintiff is a young man 21 years of age and without education and with a very poor memory for time or events. The trial judge observed, and most correctly so, that neither his testimony nor that of his mother was of any help whatsoever. Both of these witnesses would testify one way in response to plaintiff’s counsel and in a directly contrary manner in response to questions by defendant’s counsel. Accordingly, we must resolve the matter on the basis of the testimony of the various doctors who examined the plaintiff.
Dr. Gordon Peek, who was called on behalf of plaintiff, had examined the latter on July 13, 1953, at the request of his attorney. He stated that on the occasion of this examination he found “a slight scar in the area of the junction of the middle and lower third of the right leg, which was well healed with a totally stable leg, no evidence of an> instability at the fracture site or at any of the associated joints, knee or ankle.” This doctor further testified as follows:
“Q. And at that time you found from your own examination and from an examination of Dr. Tomsula’s X-rays you found a well healed fracture? A. That’s right.
“Q. And it was your opinion that he could resume any activity that he cared to? A. That’s right.
“Q. Is that still your opinion? A. That is still my opinion as of that time.
“Q. As of that time? A. Yes, according to the x-ray and according to the physical examination he was able to resume his usual duties.” (Emphasis ours.)
*461 ******
“Q. * * * And at the time of your examination the first time you saw this man in 1953 in July, you would, then have returned him to full duty as a manual laborer would you not? A. Yes, sir.” (Emphasis ours.)
Dr. Peek was the only doctor called by the plaintiff. Dr. Joseph Tomsula, a radiologist, who testified on behalf of the defendant, had made X-rays of the plaintiff’s initial fracture on November 10 and December 11, 1952, and on February 24 and April 28, 1953. He stated that the first of these X-rays showed a fracture in the lower one-half of the tibia of the right leg but that there was no damage to the fibula. The fracture of the tibia was one, he stated, sometimes referred to as a “bending fracture” with no gross displacement or derangement except for a slight curvature of the bone. With reference to the X-rays made on April 28, 1953, this doctor stated that the union of the bones was radio-graphically complete and that at that time it was a healed fracture. When asked whether the original fracture had contributed to or caused the second fracture, this doctor stated very definitely that he did not believe so.
Dr. John T. Lewis, who also testified on behalf of the defendant, treated the plaintiff for his first fracture and also saw him at Our Lady of the Lake Plospital on the night of the second fracture. Testifying with respect to the condition of the plaintiff’s leg, on April 28, 1953, this doctor stated that in his opinion the leg at that time was sound and strong and released him, estimating that his disability would not exceed an additional month. He further stated that he was of the opinion that the plaintiff, around the first of June of that year, would be able to resume the type of work he had always done, which was logging. This doctor agreed with Dr. Tom-sula with respect to the second fracture stating that he could find no causal connection between the two.
Another doctor who testified on behalf of the defendant, Dr. Alvin Stander, Orthopedist, had not examined the plaintiff in connection with his first injury but testified with regard to same on the basis of the X-rays which he examined in court. He concluded from his examination of the X-rays taken on February 24, 1953, that the healing at that time was sufficient for the plaintiff to be able to return to manual labor.
Counsel for plaintiff made much of the fact that the plaintiff complained of a swelling and pain in his right leg up to the time of the second fracture and maintained that this swelling indicated weakness in the healing of the original fracture. The testimony, however, is all to the effect that such a swelling is in no way related to the condition of the bone but is concerned mainly with circulation and the condition of the flesh around the bone. We are impressed by the fact that even though the second fracture occurred in the same general area, as the first one, that all four doctors testified with virtually no difference of opinion among them. All agreed that the second fracture was not a re-break of the first but an entirely new one as the first had healed for all practical purposes. This being the case, it necessarily follows that the plaintiff has failed to prove his case and that the judgment in the lower court in rejecting his demands was correct.
Judgment affirmed.